SCOTT J. SAGARIA (BAR # 217981)
ELLIOT W. GALE (BAR #263326)
JOE B. ANGELO (BAR #268542)
SCOTT M. JOHNSON (BAR #287182)
**SAGARIA LAW, P.C.**
2033 Gateway Place, 5th Floor
San Jose, CA 95110
408-279-2288 ph
408-279-2299 fax

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| **JAMES MCGOEY,**<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Equifax, Inc.; Trans Union, Wells Fargo Bank, N.A. and DOES 1 through 100 inclusive**,**<br><br>　　　　　　Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act;<br>2. Violation of California Consumer Credit Reporting Agencies Act; |

COMES NOW Plaintiff **JAMES MCGOEY**, an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), § 1681i(a)(2)(A), 15 U.S.C. § 1681i(a)(4), 15 U.S.C. § 1681i(a)(5)(A)) and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of

Plaintiff's Wells Fargo Bank, N.A. account, which has a division named Wells Fargo Home Mortgage ("Wells Fargo" or "Wells Fargo Bank, N.A.").

3. Plaintiff is seeking actual damages against the Credit Bureaus and Wells Fargo Bank, N.A. based on multiple denials of credit and or receiving credit at higher than market rates based on the inaccurate reporting alleged herein.

4. Plaintiff is also seeking actual damages related to the severe emotional distress Plaintiff has endured for over a year attempting, to no avail, to have the trade line at issue properly updated and reported accurately.

5. Plaintiff also seeks statutory damages for Defendants willful failure to conduct a reasonable investigation into Plaintiff's numerous disputes regarding the subject account.

## JURISDICTION & VENUE

6. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

7. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

8. This venue is proper pursuant to 28 U.S.C. §1391(b).

## GENERAL ALLEGATIONS

9. Plaintiff holds title to residential real property commonly referred to as 1500 Park Ave. #211 Emeryville, California 94608 (Hereinafter Park Ave.)

10. Park Ave. is Plaintiff's primary residence and home office.

11. Sometime before August 31, 2010 Plaintiff became financially burdened and became delinquent on the 1st Deed of trust (held by Wells Fargo Bank) on Park Ave. and several other debts.

12. In response, Plaintiff filed for Chapter 11 protection on August 31, 2010.

13. Plaintiff obtained an Order confirming his Plan on March 4, 2013.

14. A final decree was entered on October 3, 2013

15. Plaintiff's Chapter 11 plan did not modify Wells Fargo's 1st Deed of Trust.

16. Instead, Plaintiff alerted the bankruptcy court that Plaintiff intended on securing a loan modification directly with Wells Fargo outside of Chapter 11.
17. Plaintiff and Defendant Wells Fargo bank entered into a Loan Modification on or around August 1, 2014 regarding Park Ave.
18. By its terms the modification proposed to modify Defendant's note dated July 25, 2005, in the original principal sum of $335,952 secured by a Deed of Trust bearing the same date and recorded on August 19, 2005 in INSTRUMENT NO. 2005356413, at the OFFICIAL Records of Alameda County, California.
19. The modified principal balance of the note included all amounts and arrearages that were past due as of the Modification Effective Date.
20. The new principal balance of the note was $366,019.70.
21. The interest rate on the modified loan was 5.1250% and began to accrue on the new principal balance as of September 1, 2014.
22. The modified loan called for payments of $2,173.44 in months 1-480.
23. Said payments included principal, interest, and escrow.
24. The first payment on the new modified loan was due 10/01/2014.
25. Since August 2010 till present Plaintiff has only missed 4 payments on the subject loan. Those 4 payments were missed pre modification at the request of Wells Fargo as a condition to having the loan modified.
26. In September of 2015 interest rates were markedly lower than the 5.125% Plaintiff continued to accrue on Park Ave.
27. Given that Plaintiff was five years removed from filing Chapter 11 and had never missed a payment on his modified loan, Plaintiff attempted to refinance Park Ave.
28. Plaintiff, however, was turned down for the refinance.
29. When Plaintiff inquired about the refinance being denied Plaintiff was shocked to uncover that despite the valid loan modification Wells Fargo was NOT reporting Plaintiff's timely mortgage payments.

30. Instead Wells Fargo was reporting insufficient data each month regarding Plaintiff's ongoing timely monthly mortgage payments.
31. In addition Wells Fargo continued to report the account as if was included in an active bankruptcy.
32. Such reporting was both facially inaccurate and entirely misleading.
33. Plaintiff admittedly filed for bankruptcy but had not modified the loan through the Chapter 11 process. Instead Plaintiff modified the loan directly with Wells Fargo.
34. In addition Plaintiff had received his final decree years ago.
35. Consequently, it appeared to potential lenders that Plaintiff was in an active bankruptcy and NOT making timely monthly mortgage payments, or at the very least the credit report made it unclear whether or not monthly payments were being received.
36. In addition, the report also seemed to indicate the account was somehow impacted by the Chapter 11. It was not.
37. Instead, Plaintiff modified this loan directly with Wells Fargo Home Mortgage post petition.
38. Plaintiff disputed the account directly with Wells Fargo shortly thereafter.
39. In October 2015 Plaintiff received a letter back from Wells Fargo in response to his dispute stating that they had conducted an investigation and the account was reporting accurately.
40. Plaintiff was livid.
41. Consequently, beginning in October 2015 Plaintiff had multiple ongoing communications with Wells Fargo regarding the trade line at issue not accurately reflecting the account as not being included in his Chapter 11 and failure to report accurate on time monthly mortgage payments.
42. These communications continued for months and extended into 2016.
43. On March 10, 2016 Wells Fargo sent Plaintiff a letter stating Plaintiff's inquiry had been received and was being reviewed.

44. On March 24, 2016 Wells Fargo sent Plaintiff another letter stating there investigation was ongoing.
45. On April 7, 2016 Wells Fargo sent another letter to Plaintiff stating their investigation was still ongoing.
46. On April 21, 2016 Wells Fargo sent another letter to Plaintiff stating their investigation was still on going.
47. On April 26, 2016 Plaintiff sent a letter to Wells Fargo Representative Jay Gehrt noting the multiple communications he had with Nicole Simerly and that those communications had failed to correct the trade line.
48. The letter specifically noted that 1) that Plaintiff had to engage legal counsel to send a letter explaining that the Chapter 11 had not modified the loan 2) the case had been closed since 2013 and 3) that he continued to make ongoing payments.
49. In response, on May 05, 2016 Wells Fargo sent another letter to Plaintiff stating their investigation was still on going.
50. On May 19, 2016 Wells Fargo sent another letter to Plaintiff stating their investigation was still on going.
51. On June 16, 2016 Wells Fargo sent another letter to Plaintiff stating their investigation was still on going
52. On June 22, 2016 Wells Fargo sent another letter to Plaintiff stating their investigation was still on going.
53. On July 21, 2016 Wells Faro sent another letter to Plaintiff stating their investigation was still on going.
54. That same day on July 21, 2016 Wells Fargo sent a second letter to Plaintiff stating they had updated the credit report on April 6, 2016.
55. The same letter stated that they had requested a "life of loan" report block in their system, removed any credit reporting history since February of 2011, and that they shall report a 0 balance.

56. Plaintiff NEVER requested any of the aforementioned.  Instead, Plaintiff had by now on multiple occasions explained to Wells Fargo that he had modified the loan with Wells Fargo directly, it was not included in his bankruptcy, and wished that Wells Fargo would start accurately reporting his ongoing timely monthly mortgage payments.
57. Fed up with the lack of progress dealing directly with Wells Fargo, Plaintiff began disputing the account directly with the Credit Bureaus, Equifax, TransUnion, and Experian as early as June or July of 2016.
58. Plaintiff's dispute(s) specifically put the credit bureaus on notice that Plaintiff's account was paid, current, and not in bankruptcy or included in his bankruptcy.

**TransUnion**

59. In response as early as July 20, 2016 Trans Union sent a reinvestigation report that showed no payment history whatsoever, the account closed, and the pay status as included in bankruptcy. Such reporting was facially inaccurate and obviously misleading.
60. To start, the account was NOT closed. It was in fact open and Plaintiff continued to make payments. None of Plaintiff's payments were reflected.  In addition, the account was not included in bankruptcy. Plaintiff modified the loan directly with Wells Fargo outside of the Chapter 11 process, and the Chapter 11 case had been closed for years. Thus to suggest the pay status was somehow related to bankruptcy was objectively inaccurate.
61. And thus began Plaintiff's multiple disputes with TransUnion.
62. After further dispute, TransUnion sent Plaintiff another reinvestigation report on or around September 9, 2016. TransUnion finally fixed the pay status to show current; paid as agreed but continued to report the account closed and Plaintiff's bankruptcy "dismissed."
63. Such reporting was also objectively wrong. Stating that the account was closed and reporting the status as current is facially contradictory. In addition, Plaintiff's Chapter 11 was not dismissed but confirmed and a final decree entered i.e. successful.

64. Plaintiff re-disputed the account with TransUnion. Plaintiff's dispute included a letter from Plaintiff's Chapter 11 attorney explaining the loan was not part of the Chapter 11 as well as the order granting the final decree.

65. In response on or around October 5, 2016 TransUnion responded by sending Plaintiff a reinvestigation report that had removed the Chapter 11 dismissal remark BUT reinserted the pay status as included in bankruptcy! TransUnion also continued to report the account closed.

66. Plaintiff again disputed the account with TransUnion.

67. In response to Plaintiff's dispute TransUnion sent Plaintiff another reinvestigation report on or around November 9, 2016. This report correctly updated the pay status to current but still showed the account closed. In addition for the first time TransUnion inserted a comment about the 4 missed payments on the account. Last, TransUnion finally added a payment history but rather than reporting ongoing timely payments Trans Union reported each payment as Unknown.

68. Such reporting was still wrong. Plaintiff's payments were not unknown. They were being paid every month on time. In addition, while Plaintiff technically did not make four mortgage payments (years ago) those non mortgage payments were at the specific request of Wells Fargo in order to complete the modification process.

**Equifax**

69. In response to Plaintiff's dispute Equifax sent Plaintiff a reinvestigation report on or around June 28, 2016.

70. The report failed to list any ongoing monthly mortgage payments, the status of the account as included in Bankruptcy, the account closed, date of first delinquency 8/2010, and noted that Plaintiff filed Chapter 7.

71. Such reporting was facially inaccurate and obviously misleading.

72. To start, Plaintiff was in fact making ongoing monthly mortgage payments but Equifax refused to report such payments. The account was not closed but open and active. And Plaintiff did not file Chapter 7 but Chapter 11.

73. Plaintiff continued to dispute the account with Equifax but to no avail.
74. On September 9, 2016 Plaintiff received a reinvestigation report from Equifax that still contained no payment history, still listed the account closed, still listed a mysterious Chapter 7 filing, the account still included in bankruptcy, AND re-aged the account showing the date of 1st delinquency as 8/2016!
75. Such reporting was still obviously inaccurate. Plaintiff was making ongoing payments, the account was not included in bankruptcy, the account was open, and Plaintiff's date of 1st delinquency was NOT 8/2016. Plaintiff had not been delinquent on the account since Plaintiff originally filed Chapter 11 in 2010.
76. After another dispute, Equifax sent Plaintiff another reinvestigation report on September 23, 2016. Equifax finally removed the Chapter 7 notation, corrected the date of first delinquency, but continued to report the account closed, the status in bankruptcy, and no payment history.

**Experian**

77. Experian stopped reporting the account during the dispute process.
78. As of February 28, 2017 Experian does not report the account at issue.

**Damages**

79. As a direct and proximate cause of the inaccurate reporting Plaintiff has incurred actual damages of including but not limited to:

    1) Multiple denials of home mortgage refinancing. Plaintiff calculates the projected additional cost over the term of the Park Ave. loan will be $111,715.20.

    2) Plaintiff refinanced commercial property in October of 2016. Due to the inaccurate reporting of Wells Fargo Plaintiff could only receive an above market rate of 9.99% on $1,740,000 loan where market interest rates were 4.99%. Plaintiff continues to pay $14,485.50 each month or an additional $7,250 above market rates. Plaintiff calculates an additional $261,000 shall be paid over the course of the loan.

    3) Plaintiff financed an automobile loan in May of 2016. Due to the inaccurate reporting of Wells Fargo Plaintiff was forced to accept a 9% interest rate where

market rates were as low as 0%. Plaintiff estimates the additional cost over the term of the loan at $10,422.72

4) Plaintiff has only been approved for high interest rate credit cards. Specifically, Plaintiff has a Capital One Platinum Master card with an interest rate of 25.40%, a Spark visa Card with an interest rate of 23.4%, and a Merrick Bank Visa Card with an interest rate of 29.45%.

5) Denial of checking account overdraft coverage by Citibank despite having deposited in 2016 over $350,000 in a business account, $100,000 in a personal account, and maintaining balances of $100,000.

6) Denial of auto financing by Wells Fargo based on non-payment of additional Wells Fargo accounts. Plaintiff, however, did not have any other Wells Fargo accounts at the time.

7) Denial of retail credit card by Amazon

8) Denial of an SBA line of credit

9) Multiple missed business and property deals

10) Extreme emotional distress

80. The actions of the Defendants as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), § 1681i(a)(2)(A), 15 U.S.C. § 1681i(a)(4), 15 U.S.C. § 1681i(a)(5)(A))

81. The actions of Defendant Wells Fargo as alleged herein are acts in violation of the Consumer Credit Reporting Agencies Act California Civil Code § 1785.25(a).

**FIRST CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants and Does 1-100)

**Equifax, Inc. and TransUnion, LLC – Failure to Assure Credit Reporting Accuracy.**

82. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

83. The CRAs violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

84. Had The CRAs maintained reasonable procedures to assure maximum accuracy the CRAs would never have allowed Defendant Wells Fargo to report the account as described herein.

85. As a result of the The CRAs's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages described herein.

86. The violations described herein by The CRAs were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

87. The CRAs intentionally send consumer disputes to employees who do not live within the continental United States.

88. This is intentionally done to hide and or subvert a consumer's ability to confront the individual directly responsible for approving accurate reporting.

89. These employees for The CRAs receive little to know training concerning how to accurately report consumer debt.

90. Instead these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate.

91. The CRAs employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

92. The CRAs have intentionally setup this system in order to undermine, hide, and otherwise frustrate a consumers' ability to properly dispute and correct credit reports.

93. In addition, given the multiple disputes directly with the CRAs it is impossible for the CRAs to have setup any reasonable system to address inaccuracies. The CRAs after months of disputes should have uncovered the inaccuracies. They did not because their system is inherently flawed and reckless.

94. The violations by the CRAs were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15

U.S.C. § 1681n.  In the alternative, the CRAs were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

95. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from the CRAs in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants and Does 1-100)

**Wells Fargo  –Failure to Reinvestigate.**

96. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

97. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

98. Defendant Wells Fargo  violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

99. The CRAs provided notice to Wells Fargo Home Mortgage that Plaintiff was disputing the inaccurate and misleading information but Wells Fargo Home Mortgage  failed to conduct a reasonable investigation of the information as required by the FCRA.

100. Based on Plaintiff's MULTIPLE disputes, Defendant should have known its account was not included or modified by Plaintiff's Chapter 11 but instead modified directly with Defendant.

101. The most basic investigation would include as simple review of the loan modification entered into between Plaintiff and Wells Fargo.

102. Plaintiff alleges Defendant did not review whether or not a loan modification was entered into, whether or not Plaintiff did or did not included the account in Plaintiff's bankruptcy, whether the account was active, and whether or not Plaintiff was making ongoing payments.

103. If Defendant had done such an investigation Defendant would have seen its reporting was totally and completely inaccurate.
104. Such a lack of investigation is wholly unreasonable.
105. Plaintiff further alleges Defendant has not properly trained those directly investigating disputes or credit reporting industry standards and as such have developed reckless policies and procedures.
106. Instead Wells Fargo ships disputes overseas to employees who are intentionally beyond the reach of consumers in an effort to thwart a consumer's ability to confront those individuals responsible for inaccuracies.
107. If Wells Fargo had developed reasonable procedures it would have uncovered the inaccuracies described herein given the multitude of disputes occurring over the last year.

**Equifax, Inc. and TransUnion, LLC – Failure to Reinvestigate Disputed Information.**

108. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.
109. After Plaintiff disputed the accounts mentioned above, the CRAs were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.
110. The most basic investigation required the CRAs to send all relevant information via an ACDV to the furnishers which they did not do.
111. Thus the CRAs failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.
112. In the alternative Plaintiff alleges that the CRAs had their own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.
113. Each CRA is not a passive entity bound to report whatever information a data furnisher provides.
114. Given the aforementioned, Plaintiff alleges that the CRAs can and do suppress inaccurate information from being reported when data furnishers provide inaccurate information.

115. The CRAs failed to conduct a reasonable investigation because any basic investigation would have uncovered that Plaintiff had not filed Chapter 7 but Chapter 11, had not included this account, that the account was in fact open, and ongoing payments were being made.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(2)(A))
Against Defendants and Does 1-100)

**Equifax, Inc. and TransUnion, LLC – Failure to Assure Credit Reporting Accuracy.**

116. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

117. The CRAs violated 15 U.S.C. § 1681i(a)(2)(A) by failing to provide Defendant with all the relevant information regarding Plaintiff's disputes.

118. As a result of the CRAs's violation of 15 U.S.C. § 1681i(a)(2)(A), Plaintiff suffered the aforementioned actual damages.

119. The violations by the CRAs were willful, rendering Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the CRAs were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

120. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from the CRAs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants and Does 1-100)

**Equifax, Inc. and TransUnion, LLC – Failure to Review and Consider All Relevant Information.**

121. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

122. The CRAs violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

123. As a result of the CRAs's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered the aforementioned actual damages

124. The violations by the CRAs were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the CRAs were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

125. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from the CRAs in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FIFTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants and Does 1-100)

**Equifax, Inc. and TransUnion, LLC – Failure to Delete Disputed and Inaccurate Information.**

126. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

127. The CRAs violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

128. As a result of the CRAs's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered the aforementioned actual damages,.

129. The violations by the CRAs were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the CRAs were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

130. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from the CRAs in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### SIXTH CAUSE OF ACTION
(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendants and Does 1-100)

**Wells Fargo  – Reporting Inaccurate Information to the CRAs**

131. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.
132. In the regular course of its business operations, Defendant routinely furnishs information to credit reporting agencies pertaining to transactions between Defendant and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.
133. Defendant intentionally and knowingly reported misleading and inaccurate account information to the CRAs..
134. Plaintiff alleges that Defendants re-reported multiple times the information contained herein in violation of California Civil Code § 1785.25(a).
135. Plaintiff also alleges that Defendant had reason to know that the information reported on Plaintiff's account was misleading, inaccurate, incomplete, and did not comport with well-established credit reporting industry standards.
136. Plaintiff alleges that Defendant had reason to know that by reporting the account at issue inaccurately Plaintiff would be viewed more negatively when applying for credit.
137. Plaintiff alleges that the bankruptcy notices, disputes letters from all three credit reporting agencies, the consumer data industry resource guide, and the dozens of communication with Defendant directly should have provided notice to Defendant of its misleading and inaccurate reporting.
138. Defendant failed to notify Equifax, Inc. and TransUnion, LLC that the information Defendant re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).
139. Defendant's communications of false information, and repeated failures to investigate, and correct their inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.
140. As a direct and proximate result of Defendants' willful and untrue communications, Plaintiff has suffered the aforementioned actual damages and such further expenses in an amount to be determined at trial.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

//

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;
3. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;
5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and
6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o;

Dated: March 31, 2017

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

Dated: March 31, 2017

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff